IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TRUDY NOLLES, ANGIE PALMER and DAVID M. JEFFREY, | ) ) ) | |
| Plaintiffs, | ) ) | 8:06CV422 |
| v. | ) ) ) | |
| THE STATE COMMITTEE FOR THE REORGANIZATION OF SCHOOL DISTRICTS, KENDALL MOSELEY, GIL KETTELHUT, TERESA HAWK, GERRY OSBORN and TERRY LOSHEN, | ) ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |

This matter is before the Court following an
evidentiary hearing held on October 16, 2006, during which the
parties presented a stipulation of facts (Ex. 1), together with
closing arguments.  Both parties had previously submitted their
respective briefs.  At the conclusion of this hearing, the Court
reserved ruling pending the results of the November 7, 2006,
election at which the question of whether LB 126 should be
retained or repealed was on the ballot, as plaintiffs' counsel
represented that a vote to retain LB 126 would moot the issues in
this case.  As the voters voted to repeal LB 126, the Court now
addresses the issues presented by the parties.

## I.  BACKGROUND

In 2005, over the Governor's veto, the Nebraska
Legislature enacted LB 126 which, among other things, called for
dissolving the state's Class I school districts, which serve only

kindergarten through eighth grade students, and merging them into other larger school districts serving students through twelfth grade.  LB 126 provided that by December 1, 2005, the State Committee was to issue orders directing how each Class I school district was to be merged with one or more Class II, III, IV or VI districts (Stipulation of Facts, Ex. 1 ("SOF"), ¶¶ 4-5).  These orders were not to take effect until June 15, 2006, after the end of the 2005-06 school year (SOF, ¶ 5).  After that time the Class I school districts ceased to exist (SOF, ¶¶ 5, 10).

A referendum initiative effort was commenced pursuant to Neb. Const. art. III, §§ 1, 3 and 4, seeking a vote to repeal LB 126 in its entirety by a vote of the people at the next scheduled general election on November 7, 2006 (SOF, ¶ 6).  The proponents of the referendum measure obtained sufficient signatures to place the measure on the ballot, but not enough, under Neb. Const. art. III, § 3, to suspend the operation of LB 126 pending the result of the election (SOF, ¶¶ 6-9).

As the State Committee's deadline to issue the orders dissolving and merging the Class I school districts (December 1, 2005) approached, three residents and taxpayers in Class I school districts and some school districts themselves filed an action in the District Court of Lancaster County, Nebraska, seeking an injunction to prevent the State Committee from complying with LB 126 and issuing consolidation orders prior to the general

election to be held in November, 2006 (SOF, ¶ 24; "Second Amended Complaint," Ex. 18). They sought this injunction even though the Nebraska Constitution specifies that a legislative enactment that is the subject of a referendum petition will not be suspended unless the petition supporters obtain valid signatures of at least ten percent of the registered voters (Neb. Const. art. III, § 3; SOF, ¶ 8). The state court plaintiffs claimed that LB 126's deadlines and the implementation of those deadlines violated the initiative and referendum rights of voters set forth in the Nebraska Constitution. In addition, the state court plaintiffs specifically asserted that LB 126, and the implementation of its deadlines for dissolving and merging the Class I school districts before the referendum vote will be held, violated their constitutional voting rights and right to freedom of speech under the United States Constitution ("Second Amended Complaint," Ex. 18, ¶¶ 22-36).

The district court found for and issued a permanent injunction enjoining the State Committee from issuing the orders dissolving and merging the Class I school districts (SOF, ¶¶ 25-26; "Orders," Exs. 20-21). The district court addressed the plaintiffs' federal constitutional voting rights claim, finding this "issue does not apply to the facts of this case." ("Order," Ex. 20 at 6). The state district court did not address the plaintiffs' free speech claim.

-3-

The State Committee took an immediate appeal from this decision of the district court (SOF, ¶ 27).  By operation of Nebraska law, the State's appeal automatically acted as a stay of the district court's decision pending resolution of the appeal. *Neb. Rev. Stat.* § 25-21,213.  Nonetheless, the plaintiffs in the state court action filed a motion with the Nebraska Supreme Court, asking that court to enjoin the State Committee from proceeding with the issuance of the dissolution and merger orders pending the appeal (SOF, ¶ 28).  This motion was denied by the Nebraska Supreme Court on November 30, 2005 (SOF, ¶¶ 28 and 29; Exs. 22 and 23).  Therefore, on December 1, 2005, there was no effective court order enjoining the State Committee from issuing the dissolution and merger orders; and under LB 126 the State Committee was required to do so.  The State Committee issued the orders that day, although for most purposes such orders did not take effect until June 15, 2006 (SOF, ¶ 30).

The state court plaintiffs filed a cross-appeal in connection with the State's appeal of the district court's ruling (SOF, ¶ 31).  In their cross-appeal, the state court plaintiffs raised a number of federal constitutional issues, including that the effective dates of LB 126 "result in the denial of the right to vote guaranteed by the First Amendment to the Constitution of the United States" and "denial of freedom of speech guaranteed by

-4-

the First Amendment. . . ." (Brief of Appellees and Brief on Cross-Appeal, Ex. 24, at 26).

Acting in an expedited manner, the Nebraska Supreme Court heard the appeal and cross-appeal in the state court action and, on March 3, 2006, issued its opinion reversing the decision of the district court (SOF, ¶ 32; *Pony Lake School District 30 v. State Committee for the Reorganization of School Districts*, 271 Neb. 173, 710 N.W.2d 609 (2006)). In its opinion, the Supreme Court found that the district court had improperly interpreted and applied Nebraska's constitutional provisions regarding initiative and referendum rights. Having reversed the district court on those grounds, the Supreme Court then addressed the issues raised in the plaintiffs' cross-appeal to determine whether any of them could serve as a basis for upholding the district court's injunction. The Supreme Court rejected the cross-appeal claims, including the claims that the effective dates of LB 126 violated voting and free speech rights under the federal constitution. *Id.*

On March 23, 2006, the state court plaintiffs filed a petition for a writ of certiorari in the United States Supreme Court (SOF, ¶ 33). The questions presented for review in the petition included the claims that dissolving and merging the Class I school districts before the referendum vote is held

-5-

violated their voting and free speech rights ("Petition for Writ of Certiorari," Ex. 26, at I).

The state court plaintiffs subsequently submitted a motion to the Eighth Circuit Justice (Justice Alito), asking for an order staying the implementation of the merger orders until after the November 2006 general election (SOF, ¶ 34).  This motion was filed on March 29, 2006, and was subsequently denied on April 11, 2006 (SOF, ¶¶ 34 & 35; "Application," Ex. 27; Letter from Supreme Court, Ex. 28).  On May 15, 2006, the Supreme Court denied the petition for a writ of certiorari (SOF, ¶ 36; Letter from Supreme Court, Ex. 29).

The present plaintiffs filed the original complaint in this Court on June 8, 2006 (Filing No. 1) and an amended complaint on July 6, 2006 (Filing No. 13).  Defendants filed their answer to the amended complaint on July 24, 2006 (Filing No. 15).

## II.  Claims of the Parties

Plaintiffs raise the following issues:

(1) That the action of the State Committee effectively denied the voters of the State of Nebraska the right to vote guaranteed by the United States Constitution;

(2) That the actions of the State Committee has infringed on the First Amendment freedom of speech rights of the advocates for repeal of LB 126;

(3) That the State Committee's
actions in dissolving the Class I
school districts violates the due
process clause of the Fourteenth
Amendment because it has interfered
with the voters right to decide the
question of the repeal of LB 126;
and

(4) That the State Committee
procedurally violated the due
process clause of the Fourteenth
Amendment because no proper due
process hearing was held for the
Class I school districts to be
dissolved and LB 1226 did not
provide for any appeal to state
court despite the fact that the
State Committee's action was a
quasi-judicial process.

(First Amended Complaint, ¶¶ 17-31).

Defendants assert that plaintiffs' claims are barred by
the doctrines of res judicata (claim preclusion) and collateral
estoppel (issue preclusion) because all of the claims either
were, or could have been, fully litigated in the *Pony Lake*
litigation decided by the Nebraska Supreme Court (Answer, ¶¶ 32-
33).

## II.  DISCUSSION

While the Court concludes that the doctrine of res
judicata is dispositive of this case, it will first address
plaintiffs' claims.

### A.  Free Speech and Voting Rights Claims

On November 7, 2006, the voters of Nebraska voted to
repeal LB 126.  The Court notes that where the voters did in fact

-7-

vote on this issue, and did vote to repeal LB 126, the claims that the State Committee's action violated the constitutional rights to vote and of freedom of speech are moot and need not be considered.

**B.   Due Process Claims**

Plaintiffs maintain that claim preclusion cannot be applied to their due process claims because those claims could not have been raised by the *Pony Lake* plaintiffs.  As to the substantive due process claim, plaintiffs characterize this as a claim of "fundamental unfairness of the referendum election caused by the Defendants' actions."  However, it was not the actions of defendants (the State Committee and its members) that resulted in what plaintiffs allege would be a flawed or unfair election.  Rather, it is the time line requirements of LB 126, when combined with the Nebraska Constitution's requirement that it takes signatures of ten percent of the registered voters to suspend operation of a statute and the failure to obtain that number of signatures, that have caused the present situation. Defendants merely followed the specific dictates of LB 126 in issuing the dissolution orders on December 1, 2005, and in making those orders effective on June 15, 2006.

The claim that the LB 126 time lines would render the November, 2006, referendum election "fundamentally unfair" because the Class I school districts would have been dissolved

-8-

before that election could be held, was fully developed and ripe as soon as it was known that insufficient signatures had been gathered on the referendum petition to suspend operation of LB 126 until after the election was held.  The Secretary of State announced the signature shortfall on October 24, 2005.  The *Pony Lake* lawsuit was filed in state court the next day and the Second Amended Complaint in *Pony Lake* was filed on November 17, 2005. Thus, while *Pony Lake* was still in the pleading stage, it was clear that LB 126's time lines, and the failure to obtain signatures of ten percent of registered voters, could result in a referendum election that plaintiffs claim is "fundamentally unfair" because the dissolution of the Class I school districts would be completed before the election is held.

This claim could have been raised in the *Pony Lake* litigation.  The *Pony Lake* plaintiffs were well aware that, unless the LB 126 time lines for dissolution of the Class I school districts were superseded by court order, such districts "will have ceased to exist" prior to the referendum election (Second Amended Complaint, Ex. 18, ¶ 39).  The *Pony Lake* plaintiffs advanced a claim that the referendum election would be an unauthorized "advisory vote" unless the State Committee was enjoined from proceeding to issue dissolution orders according to the time line set out in LB 126.  *Id.*  There is no reason why this "advisory vote" claim in *Pony Lake* could not have been

expanded to include a claim that the election would also be "fundamentally unfair" and, allegedly, violative of substantive due process standards because it was a "question relevant to and falling within the purview of the original action [*Pony Lake*] . . . which could have been presented [in that case] by the exercise of diligence." *Norlanco, Inc. v. County of Madison*, 186 Neb. 100, 106, 181 N.W.2d 119, 123 (1970).

In their procedural due process claim, plaintiffs assert that they are property taxpayers who were denied a full evidentiary hearing by the State Committee before that body issued its orders dissolving the Class I school districts. Plaintiffs claim that their property taxes were affected by the State Committee's action and that, therefore, they were entitled to a full evidentiary hearing before the dissolution of the Class I school districts occurred.  Plaintiffs assert that this procedural due process claim could not have been advanced in *Pony Lake* because the State Committee had not yet met to consider the dissolution of the Class I school districts when *Pony Lake* was completed in the state district court.

Section 2(3) of LB 126 (Ex. 2) states that "[t]he State Committee for the Reorganization of School Districts is not required to conduct public hearings prior to issuing orders pursuant to this section."  This language, while not specifically prohibiting the holding of hearings by the State Committee,

clearly evinces a legislative intent that such hearings not be held. Moreover, nothing in LB 126 authorizes the State Committee to conduct public hearings before carrying out the instructions of the statute and dissolving the Class I school districts. The Legislature made clear that the State Committee was not required to hold hearings and provided no authority to the State Committee to do so.

Under Nebraska law "[a]n administrative body has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the act." *Brunk v. Nebraska State Racing Commission*, 270 Neb. 186, 193, 700 N.W.2d 594, 601 (2005). Thus, once LB 126 was enacted on June 3, 2005, there was absolutely no reason to believe that the State Committee could or would conduct full evidentiary hearings in connection with the dissolution of the Class I school districts. Indeed, even if the State Committee had held hearings, the State Committee still would have been limited to determining which adjoining district each Class I district would be merged with because the State Committee was not empowered to address whether or not to dissolve any or all Class I districts. Thus, the procedural due process claim could have been made in *Pony Lake*. LB 126 could have been attacked directly for allegedly not providing the requisite procedural due process prior to dissolution of the Class I school districts. The *Pony*

*Lake* plaintiffs could have posited this alleged denial of due process as another alternative basis for enjoining the State Committee from meeting and issuing the dissolution orders. *See*, *e.g.*, Nebraska Rules of Pleading in Civil Actions, Rule 8 ("Relief in the alternative or of several different types may be demanded."). Like their substantive due process claim, plaintiffs' procedural due process claim was "relevant to and falling within the purview of the original action [*Pony Lake*] . . . [and] could have been presented [in that case] by the exercise of diligence." *Norlanco,* 186 Neb. at 106, 181 N.W.2d at 123. Thus, this claim is also precluded.

### C. Res Judicata

The dispositive issue before the Court is whether or not the actions of the Nebraska Supreme Court in *Pony Lake*, serves to preclude this Court from acting on the grounds of res judicata. The Court looks to Nebraska law to determine the preclusive effect of the *Pony Lake* litigation and decision in the present action.

The Nebraska Supreme Court, has stated that "under the traditional rule of res judicata, any rights, facts, or matter in issue directly adjudicated or necessarily involved in the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated by

the parties and privies." *McCarson v. McCarson*, 263 Neb. 534, 539, 641 N.W.2d 62, 68 (2002)(*citing Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001)). The doctrine of res judicata, precluding subsequent litigation of the same cause of action, in application is broader than a determination of the questions involved in the prior action. "[T]he conclusiveness of the judgment in such case extends not only to matters actually determined, but also to other matters which could properly have been raised and determined therein. The rule applies to every question relevant to and falling within the purview of the original action, in respect to matters of both claim or grounds of recovery, and defense, which could have been presented by the exercise of diligence." *State v. Keen*, 272 Neb. 123, 129-30, 718 N.W.2d 494, 500 (2006)(*quoting Norlanco, Inc. v. County of Madison*, 186 Neb. 100, 106, 181 N.W.2d 119, 123 (1970)).

Here, the primary question is whether or not the present plaintiffs are in privity with the plaintiffs in the *Pony Lake* state court litigation. If so, then both claim and issue preclusion will apply to bar their claims in the present action.

Privity under the Doctrine of Virtual Representation.

At issue is whether Nebraska courts would conclude that plaintiffs are in privity with the *Pony Lake* plaintiffs under the virtual representation doctrine. Nebraska case law has not

-13-

directly answered this question in the context of public law litigation involving the constitutionality of a state statute.

The *Pony Lake* plaintiffs initially sought to represent a "class" that was to include all registered voters in the State of Nebraska (*Pony Lake* Second Amended Complaint, Ex. 18, ¶¶ 4, 6, 16 and 18).  The state district court concluded that such a class was too broad and would necessarily include persons with differing interests because, unlike the *Pony Lake* plaintiffs and plaintiffs in the present action, some registered voters undoubtedly support the dissolution and consolidation of the Class I school districts on the time line set out in LB 126 and do not support the referendum effort (*Pony Lake* Order, Ex. 21 at 7-8).  The state district court did not find a "conflict of interest" between the *Pony Lake* plaintiffs and every other registered voter in the state and certainly did not find a conflict of interest with those registered voters who, like plaintiffs herein, favor the referendum on LB 126 and oppose the dissolution of the Class I school districts.  Indeed, plaintiffs do not point to any interests they have that are different than or in conflict with those of the named individual *Pony Lake* plaintiffs.  The state district court's ruling on the class action request in *Pony Lake* did not prevent the present plaintiffs from joining the plaintiffs in that earlier litigation.

-14-

In *Blankenship v. Omaha Public Power Dist.*, 195 Neb. 170, 175, 237 N.W.2d 86, 89 (1976), the Nebraska Supreme Court recognized the "equitable doctrine of virtual representation" but did not limit the application of that doctrine to class actions. Rather, the Nebraska Supreme Court simply stated that the class action statute "represents an application of the equitable doctrine of virtual representation . . . ." *Blankenship*, 195 Neb. at 175, 237 N.W.2d at 89.  The *Blankenship* court only addressed the application of the virtual representation doctrine to class actions.  The court did not address, positively or negatively, the virtual representation doctrine in a non-class action scenario.

The Nebraska Supreme Court recognizes that issue preclusion may operate against a party who was not a party or in privity with a party to the prior action so long as "the presently asserted interest was adequately represented in the prior trial." *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 837, 458 N.W.2d 443, 457 (1990)(*quoting Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 29, 230 N.W.2d 99, 106 (1975)).  This is the essence of the virtual representation doctrine.  Thus, the Court finds that the Nebraska Supreme Court would recognize that the doctrine of virtual representation exists and may be applied in appropriate circumstances to bar claims or issues, even where the parties to the subsequent lawsuit were not

-15-

parties to the prior lawsuit or in privity with the parties to the prior lawsuit.

The Court finds that, if presented with this issue, the Nebraska Supreme Court would adopt the Eighth Circuit Court of Appeal's view of virtual representation enunciated in *Tyus v. Schoemehl*, 93 F.3d 449 (8th Cir. 1996), *cert. denied*, 520 U.S. 1166 (1997), because the present lawsuit challenges the constitutionality of a statute having statewide impact on the structure of Nebraska's school system on the same grounds as the *Pony Lake* lawsuit.  *Tyus* involved the second of two lawsuits challenging the drawing of ward boundaries in St. Louis, Missouri, on the grounds that the new boundaries unconstitutionally diluted the voting power of African-Americans. *Tyus*, 93 F.3d at 451.  At issue in *Tyus* was whether issue preclusion barred the Court from considering the present case on its merits because the issues were the same as those raised in the earlier action.  *Id.* at 453.  The Eighth Circuit held that issue preclusion applied in the second action because the issues raised were the same as those raised and decided in the earlier action and, therefore, the plaintiffs in the second action were in privity with the plaintiffs in the first action because they were adequately represented in the earlier action under the doctrine of virtual representation.  *Id.* at 453, 458.

The *Tyus* Court looked to several factors to determine that the plaintiff's interests had been adequately represented in the earlier action, including whether the claims raised in the two suits were identical, whether the same counsel argued both cases and whether the incentive to litigate was similar. *Id*. at 456-57. The Court specifically noted that, "[a]dequate representation is best viewed in terms of incentive to litigate." *Id*. at 458.

The *Tyus* Court found that "the second lawsuit directly contravenes the policies supporting the preclusion doctrines" because a victory by the plaintiffs in the first suit would have directly benefitted the plaintiffs in the second suit, but,

> without virtual representation, a loss by the [first] plaintiffs would cause no harm to the [second] plaintiffs. In such a situation, there is no incentive to intervene. Quite the contrary: holding preclusion inapplicable assures that a party would not intervene, for it would allow various members of a coordinated group to bring separate lawsuits in the hope that one member of the group would eventually be successful, benefitting the entire group. This entails a significant cost to the judicial system and "discourages the principles and polices the doctrine of res judicata was designed to promote."

*Id*. at 457 (*quoting Petit v. City of Chicago*, 766 F. Supp. 607, 613 (N.D. Ill. 1991). The *Tyus* Court also noted that the fact

-17-

that a case raises an issue of public law is another factor in favor of preclusion. *Id*.

> Although virtual representation may be used in the private law context, its use is particularly appropriate for public law issues. As the Supreme Court recently noted, when a case challenges a "public action that has only an indirect impact on [a party's] interests," due process concerns are lessened. In this situation, courts have "wide latitude to establish procedures . . . to limit the number of judicial proceedings . . . ."

*Id*. at 456 (*quoting Richards v. Jefferson County, Alabama*, 517 U.S. 793, 803 (1996).

As in *Tyus*, the present plaintiffs are raising the same claims as the *Pony Lake* plaintiffs, they have the same counsel and the same incentive to litigate. Further, a public law is at issue which lessens the due process concerns raised by the doctrine of virtual representation. The Court finds that the doctrine of virtual representation, as enunciated in *Tyus*, should be applied to the present case.

Plaintiffs assert that "control" of the previous lawsuit is the touchstone of virtual representation. Plaintiffs contend that virtual representation cannot apply without proof that they controlled the *Pony Lake* litigation. While participation in and control of the prior litigation are factors to be considered in determining whether or not to apply the

-18-

virtual representation doctrine, they are not the most significant factors. Indeed, under both Nebraska and federal case law, a much more important consideration is whether the interests of the party sought to be precluded were "adequately represented" in the earlier litigation.

In *Gottsch,* the Nebraska Supreme Court indicated that rules of preclusion may be applied even where traditional concepts of "privity" are not met, so long as the "presently asserted interest was adequately represented in the prior trial." *Gottsch*, 235 Neb. at 837, 458 N.W.2d at 457. Similarly, the Supreme Court and the Eighth Circuit have both stressed that a central consideration is whether or not there was "adequate representation" of the party's interests in the prior litigation. *Richards v. Jefferson County, Alabama*, 517 U.S. 793, 798 (1996); *NAACP v. Metropolitan Council*, 125 F.3d 1171, 1175 (8th Cir. 1997).

Plaintiffs have offered no evidence to support an assertion that their interests were not adequately represented by the *Pony Lake* plaintiffs. In fact, plaintiffs' interests as voters seeking to vindicate their constitutional "voting rights" and as citizens seeking to exercise their First Amendment free speech rights were vigorously advanced in *Pony Lake*. *Pony Lake*, 271 Neb. at 188-92, 710 N.W.2d at 622-25. Likewise, plaintiffs' due process interest in having the referendum vote have actual

meaning was also advanced in *Pony Lake*.  *Id. at* 192, 710 N.W.2d
at 625.  In short, plaintiffs' interests in vindicating their
rights under the state and federal constitutions were fully and
adequately represented in *Pony Lake.*  Plaintiffs' interests are
the same as the interests of the *Pony Lake* plaintiffs, and those
interests were more than adequately represented in the *Pony Lake*
litigation.

Plaintiffs cite three Nebraska cases asserting that
these cases suggest that the Nebraska Supreme Court would not
find the doctrine of virtual representation applicable.  The
Court disagrees.  First, the Court finds that two of the cases
cited by plaintiffs -- *Gottsch* and *Thomas Lake Owners Assn. v.
Riley*, 9 Neb. App. 359, 612 N.W.2d 529 (2000) -- did not involve
a public law issue or a constitutional challenge to the validity
of a statute or a public body's implementation of a statute, and
they are inapposite.  Next, the Court finds that the third case
cited by plaintiffs, *Blankenship*, a challenge to certain late
payment fees charged by the Omaha Public Power District, never
went further than a determination that the plaintiff therein
could not represent the class he purported to represent because
of differing interests within the class.  No preclusion issues
were presented in *Blankenship*.  Thus, *Blankenship* does not
contradict the Eighth Circuit's decision in *Tyus*.

Plaintiffs next assert that application of the doctrine of virtual representation would result in a denial of due process.  Plaintiffs rely primarily on language found in *Richards*.  This reliance is misplaced.  In *Richards,* the Supreme Court made clear that "extreme applications" of preclusion doctrines "may be inconsistent with a federal right that is 'fundamental in character.'"  *Richards,* 517 U.S. at 797.  Nonetheless, the *Richards* court noted that, "although there are clearly constitutional limits on the 'privity' exception, the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term."  *Id*. at 798.  Further, the *Richards* Court stated:  "'We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party.'"  *Id*. at 798 (*quoting Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)).  The *Richards* court recognized that where a taxpayer or other individual is using his or her status to complain about "public action that has only an indirect impact on his [or her] interests," due process concerns of applying preclusion doctrines are reduced and states have great latitude to establish procedures limiting the "number of judicial proceedings that may be entertained."  *Id.* at 803.

-21-

Significantly, the Eighth Circuit's *Tyus* decision was issued some two months *after Richards*.  The Eighth Circuit panel reviewed the *Richards* decision and found that while the Supreme Court provided some examples of what could constitute privity, the Court did not offer a general definition of that term.  *Tyus*, 93 F.3d at 455.  Rather, the Eighth Circuit found the Supreme Court acknowledged that "the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term."  *Id.* (*quoting Richards*, 517 U.S. at 798).

Some thirteen months after *Tyus* was decided, in *NAACP*, another Eighth Circuit panel reaffirmed that the doctrine of virtual representation was appropriate in certain circumstances.

> In this circuit, "'a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with [the person's] interests as to be [that person's] virtual representative.'"  *Tyus*, 93 F.3d at 454 (*quoting Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)).  Nonparty preclusion based on virtual representation involves an equitable, case-by-case inquiry, and there is no clear test for courts to apply. . . . Nevertheless, analyzing a particular case in light of the factors the court identified in *Tyus* enables us to "ensure that the relationship between the party to the original suit and the party sought to be precluded in the later

-22-

> suit is sufficiently close to
> justify preclusion." *Id*.

*NAACP*, 125 F.3d at 1175.  Under *NAACP,* the key question is whether the interests of the parties (to be precluded) in the subsequent litigation were adequately represented in the earlier litigation.  *Id.*  Thus, courts have found it proper, even after *Richards*, to apply the virtual representation doctrine to bar successive lawsuits in appropriate circumstances, even where plaintiffs assert due process concerns.

The Court finds that the Nebraska Supreme Court has recognized the existence and applicability of the virtual representation doctrine in certain circumstances.  While the Nebraska Supreme Court has not spoken to the applicability of the virtual representation doctrine when both the previous and present lawsuit involve the same issue of public law, the Court believes that the Nebraska Supreme Court would follow the Eighth Circuit's reasoning in *Tyus* to find the present plaintiffs in privity with the *Pony Lake* plaintiffs and in not permitting the opponents of the dissolution of the Class I school districts to simply "reload" with new plaintiffs in order to again attack a statute with which they disagree.

## IV.   CONCLUSION

Having found that the Nebraska Supreme Court's decision in *Pony Lake* is res judicata on all issues raised in this action; that plaintiffs' claims that their right to vote and their right

-23-

of freedom of speech are moot as a successful vote has occurred;
and that the procedural and substantive due process claims are
without merit, the Court will dismiss this action.  A separate
order will be entered in accordance with this memorandum opinion.

DATED this 20th day of November, 2006.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court